**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**


**EL DORADO OIL & GAS, INC.**                                                        **PLAINTIFF**


**VS**                                                **CIVIL ACTION NO. 1:22-cv-00248-LG-BWR**

**BALDEMAR FRANCISCO ALANIZ**
**And CLAWS FIBER SOLUTIONS, LLC**                                            **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS RESPONSE**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR,**
**ALTERNATIVELY, MOTION TO TRANSFER VENUE**

---

Plaintiff, El Dorado Oil & Gas, Inc. ("El Dorado"), submits this Memorandum of Law in

Support of its Response in Opposition to Defendants', Baldemar Francisco Alaniz ("Alaniz") and

Claws Fiber Solutions, LLC ("CFS"), Motion to Dismiss, or Alternatively, Motion to Transfer

Venue, Docket No. 11, and their Memorandum Brief in Support of their Motion, Docket No. 12.

For the reasons set forth in this memorandum, El Dorado respectfully requests that this Court deny

Defendants' Motion. Additionally, Plaintiff separately moves the Court for leave to file a Second

Amended Complaint.

<u>**BACKGROUND**</u>

El Dorado and Alaniz entered into a contract. Alaniz breached the contract and El Dorado

seeks relief for Alaniz's breach, and his continued breaches of the agreement. El Dorado is a

Mississippi corporation. Alaniz is a resident of Texas.

In May of 2021, Tom Swarek, President of El Dorado, and Alaniz began discussing

potential business dealings with each other. <u>Ex. 1</u>, Second Declaration of Tom Swarek. These

initial discussions were over the telephone, with Swarek in Mississippi and Alaniz in Texas. *Id.* About a month after these initial discussions began, Alaniz traveled to the Mississippi Gulf Coast to meet with Swarek. *Id.* While in the state, Alaniz met with Swarek both at Swarek's office and at Swarek's lawyer's office. *Id.* The purpose of Alaniz's visit was to finalize negotiations regarding a letter of intent that the parties discussed for the past month, and ultimately enter into the letter of intent, which they did. *Id.*

The letter of intent contemplated that the parties would form a new oil and gas corporation, Black Diamond, of which El Dorado would own 51% and Alaniz would own 49%. Docket No. 3-2, at ¶ 3. The letter of intent further contemplated that: El Dorado would pay certain debts of Alaniz; El Dorado would be in control of all decisions that direct Black Diamond; and that all "assets, contacts and or contracts that Baldemar Francisco Alaniz or contacts will be directed by Black Diamond including but not limited to Tri Element, Inc. of Texas, Claws Fiber and Titanium Well Service, Inc. a Texas corporation (2) tracts of land approximately (10) acres, all equipment, trucks, crews, trailers," which were more fully described in an attachment to the letter of intent. *See* Docket No. 3-2.

With regard to Alaniz's debts, the parties agreed that El Dorado would execute a backup Promissory Note to Equify Financial for $2.4 million with 1% interest for four years, and 4% interest for the fifth year. The parties agreed this was to be paid monthly for five years until Equify was paid in full. Docket No. 3-2 at ¶ 1. This amount to be paid to Equify Financial was to cover a 2019 loan that Alaniz received from Equify Financial, but stopped paying on in February 2021. *See* Docket No. 3-3.

The parties also agreed that El Dorado would "cause a loan to be issued to Black Diamond to pay off or refinance two cranes that Peoples Bank of Houston now has as collateral for a loan

at the present time." Docket No. 3-2 at ¶ 4. The loan referenced in the letter of intent was a loan that Peoples United Equipment & Finance Co. ("Peoples United") issued to Alaniz. Docket No. 3-1.

In the time since the parties entered into the letter of intent, El Dorado has timely paid on the Equify Financial loan and is current on the loan. Docket No. 3-1. All amounts paid by El Dorado to Equify have been paid by check sent from Gulfport, Mississippi to Equify Financial in Texas. Ex. 1. The money paid to Equify Financial comes from El Dorado's bank in Mississippi. *Id.*

El Dorado has also paid $850,000 for the purchase of the two cranes that Peoples United had as collateral for a loan that Peoples United issued to Alaniz. Docket No. 3-1. This amount was paid by checks sent from Gulfport, Mississippi to Peoples United in Texas. Ex. 1. The money paid to Peoples United comes from El Dorado's bank in Mississippi. *Id.*

Notwithstanding El Dorado's payments of certain of Alaniz's debts, in accordance with the parties' Letter of Intent, Alaniz disregarded the business decisions of El Dorado regarding use of equipment, cranes, and other business decisions made by El Dorado. Docket No. 3-1. Alaniz's company, CFS, through the actions of Alaniz, has used El Dorado's equipment for its own use without payment to El Dorado, and without any accounting for the use of or rental of the equipment. *Id.* Defendants have refused to give El Dorado access to CFS's bank account, and have prevented El Dorado's employees or agents from accessing property that El Dorado owns—all in contravention of the express terms of the Letter of Intent. *Id.*

On September 28, 2022, El Dorado filed the operative pleading in this case. Docket No. 3. Following their receipt of the summons and complaint, Defendants moved to dismiss, or alternatively change venue. Docket Nos. 11, 12. Approximately two weeks after the Defendants

moved to dismiss El Dorado's Amended Complaint, El Dorado's counsel at the time moved to withdraw from the case. Docket No. 13. This motion to withdraw was ultimately granted, and El Dorado's current counsel entered their appearance in the case on December 16, 2022. Docket Nos. 15, 16.

Since entering notices of appearance and preparing this response, counsel for El Dorado has met with the Plaintiff and reviewed the operative pleading. In so reviewing, the undersigned counsel learned of additional facts to support El Dorado's existing claims, as well as facts that support additional claims. Undersigned counsel also noticed deficiencies in El Dorado's operative pleading. As such, El Dorado separately moves the Court for Leave to File a Second Amended Complaint. Docket No. 17. In the Second Amended Complaint, El Dorado names only Alaniz as a Defendant. *See* Docket No. 17-1.

In light of El Dorado's Motion for Leave to File a Second Amended Complaint, and its removal of CFS as a Defendant, any argument raised by the Defendants advocating for the dismissal of claims against CFS is moot. As such, El Dorado responds to Defendants' motion to dismiss only insofar as it relates to Alaniz.

## LAW AND ARGUMENT

### I.     This Court has personal jurisdiction over Alaniz.

Defendants argue that the Court should dismiss this case under Rule 12(b)(2) of the Federal Rules of Civil Procedure. In support of their argument, Defendants state that "Plaintiff [El Dorado}is the *only* connection this case has to Mississippi," Docket No. 12 at 12 (emphasis in original), and they argue that there is no jurisdiction over them under Mississippi's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Id.* at 13–21. That is not so.

A federal court sitting in diversity may assert personal jurisdiction over a non-resident defendant if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If a party raises the defense of lack of personal jurisdiction, the non-moving must prove personal jurisdiction exists, "but it only needs to make out a prima facie case if the district court rules without an evidentiary hearing . . . . Proof by a preponderance of the evidence is not required." *Id.* "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.*

### A. *The contract prong of Mississippi's long-arm statute is satisfied.*

The Mississippi Supreme Court has interpreted Mississippi's long-arm statute to permit exercise of personal jurisdiction over a non-resident defendant who: (1) makes a contract with a resident of this state to be performed in whole or in part by any party in this state; (2) commits a tort in whole or in part in this state against a resident or non-resident of this state; or (3) does any business or performs any character of work or service in this state." *Scott M. Favre Pub. Adjuster, LLC v. Davis Dev., Inc.,* No. 1:12CV75-HSO-RHW, 2012 WL 2316906, at *2 (S.D. Miss. June 18, 2012) (citing *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 775 (S.D. Miss. 2001), and MISS. CODE ANN. § 13-3-57). "The three prongs of Mississippi's long-arm statute are commonly referred to as the 'contract prong, tort prong, and doing business prong.'" *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 497 (5th Cir. 2012).

This case falls within the ambit of the contract prong. To satisfy the contract prong of Mississippi's long-arm statute, "two prerequisites must be present: (1) the contract must be made with a resident of Mississippi, and (2) it must be performed either in whole or in part by either party in Mississippi." *Scott M. Favre Pub. Adjuster*, 2012 WL 2316906, at *2. Because there is no factual dispute that El Dorado is a resident of Mississippi, El Dorado focuses on the second prong of the contract analysis.

Courts have analyzed what constitutes performance of a contract in whole or part in Mississippi on numerous occasions. In doing so, this Court cautioned against a "narrow and unfounded view of what performance of a contract entails." *Medical Assurance Co. of Mississippi v. Jackson*, 864 F. Supp. 576, 578 (S.D. Miss. 1994). For example, in *Medical Assurance*, the court found that partial performance of the contract occurred in Mississippi where a check was sent from Mississippi, the check was paid by a Mississippi bank, and the release form was returned to a location in Mississippi. *Id.* The court reached this conclusion even though settlement proceeds were sent to Alabama and the parties revised and executed the release in Alabama. *Id.*

Similarly, in *M-D Med. Servs., Inc. v. M.A.S.H., Inc.*, No. 3:18-cv-336-HTW-LRA, 2019 WL 1433771 at *4 (S.D. Miss. Mar. 28, 2019), this Court determined partial performance of a contract occurred in Mississippi where various negotiations regarding the terms of the agreement were over the telephone while one party was in Mississippi, products purchased were shipped from Mississippi, payments for those products were made by checks mailed to Mississippi and deposited in Mississippi banks. *Id; see also Sheridan, Inc. v. C.K. Marshall & Co.*, 360 So. 2d 1223, 1225 (Miss. 1978) (finding the exercise of jurisdiction was appropriate under the Mississippi Long-Arm Statute where the defendant contracted with a Mississippi resident to rent equipment and the rental payments were made to Mississippi).

Here, like in *M-D Med. Servs.*, various conversations and negotiations regarding the terms of the Letter of Intent were over the telephone with one party, Tom Swarek on behalf of El Dorado, in Mississippi. Unlike defendants in both *Medical Assurance* and *M-D Med. Servs.*, two cases in which the court determined the contract prong of Mississippi's long-arm statute was satisfied, Alaniz traveled to Mississippi to further negotiate the terms of the Letter of Intent with Swarek, on behalf of El Dorado, and to ultimately enter into the Letter of Intent. Ex. 1. Upon agreeing that El Dorado would pay certain debts of Alaniz, El Dorado made such payments by checks that were written in, and mailed from, Mississippi, and paid with funds in Mississippi banks. *Id.*

The cases cited by Defendants to support their argument that the contract prong is not satisfied are inapposite. Although the court in *Boots Smith Oilfield Servs., LLC v. Chief Oil & Gas*, did find that the plaintiff failed to demonstrate the jurisdiction was appropriate under the contract-prong of Mississippi's long-arm statute, it made such a finding because all of the Plaintiff's assertions supporting jurisdiction were in the plaintiff's briefing, rather than in the complaint or an affidavit. No. 2:13-CV-48-KS-MTP, 2013 WL 3475228, at *1 (S.D. Miss. July 10, 2013). That is not the case here. Similarly, *Thrash Aviation, Inc v. Kelner Turbine, Inc*. does not support a finding that the contract prong is not satisfied here. There, the only actions alleged by the plaintiff to have occurred in Mississippi were consequential damages that resulted from the transaction. 72 F. Supp. 2d 709, 716 (S.D. Miss. 1999). Although El Dorado has certainly been damaged in Mississippi, it has alleged numerous actions that support a finding that the contract prong is satisfied.

Whereas here, the "nonresident defendant takes purposeful and affirmative action, the effect of which is to cause business activity, foreseeable by the defendant in the forum state, such action by the defendant is considered sufficient minimum contact for jurisdictional purposes, and

since Plaintiff is a corporation located in Mississippi, its performance under the contract took place, at least in part, in Mississippi." *M-D Med. Servs.*, 2019 WL 1433771, at *4 (citing *Cirlot Agency, Inc. v. Sunny Delight Beverage Co*., 2012 WL 1085867, *4 (Miss. Ct. App. 2012)). As such, El Dorado satisfies the contract prong of Mississippi's long-arm statute.

**B.** *The exercise of personal jurisdiction comports with federal due process.*

This Court's exercise of personal jurisdiction over Alaniz must also comport with the requirements of federal due process. *See Stripling v. Jordan Prod. Co*., 234 F.3d 863, 869 (5th Cir. 2000). Due process requires that a defendant over whom personal jurisdiction is sought to have certain minimum contacts with the forum state, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945).

Personal jurisdiction may be general or specific. Because the claim here arises from Alaniz's contact with Mississippi, El Dorado alleges specific personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868 (1984). "Where a plaintiff alleges specific jurisdiction, due process requires: (l) minimum contacts by the defendant purposefully directed at the forum state; (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *M-D Med. Servs*., 2019 WL 1433771, at *5.

This Court has held that "[c]ontracting with a resident of the forum state, along with the presence of some other factor or factors, is sufficient to satisfy due process." *Id.* In *Medical Assurance*, "the Court determined that the defendant's initiation of the contract in the forum, ongoing communication in the forum, cashing a check from a state bank in the forum, and returning the release to the forum, were sufficient contacts to comport with due process." *Id.* The same is

true here. Alaniz's ongoing communications with Swarek occurred in Mississippi, his negotiations with Swarek were in Mississippi, and his entry and execution of the Letter of Intent happened in Mississippi. This evidence supports the claim by El Dorado that Alaniz directed contact toward Mississippi, such that it was foreseeable that he could be haled into court in Mississippi without offending due process. *Id.*; *Medical Assurance*, 864 F. Supp. at 579.

## II.     The Southern District of Mississippi is the proper venue for this case.

Defendants argue that the Court should dismiss this lawsuit under Rule 12(b)(3) of the Federal Rules of Civil Procedure. In support of their argument, Defendants state that venue is not proper under 28 U.S.C. § 1391(b), and they argue that El Dorado cannot meet its burden to sustain venue. Docket No. 12 at 21–24. The Defendants are incorrect and as explained below, venue is proper in the Southern District of Mississippi.

When evaluating a claim for improper venue, the court must accept as true all allegations in the plaintiff's complaint, and resolve all conflicts in the plaintiff's favor. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). The court is permitted, however, "to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco Inc. v. Bossclip B* V, 570 F.3d 233, 238 (5th Cir. 2009). Notably, dismissal under Rule 12(b)(3) is only authorized "when venue is 'wrong' or 'improper' in the forum in which it is brought." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).

When jurisdiction is based on diversity of citizenship, venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Of course, "[m]ore than one district can be an appropriate venue under § 1391." *PIC Grp., Inc. v. Landcoast Insulation, Inc.*, 2008 WL 3617735, at *3 (S.D. Miss. Oct. 29, 2009). To that end, "the

statute does not require the Court to choose the best of two or more forums;" rather, the statute "simply requires the Court to examine whether the current forum has a substantial connection to the plaintiff's claims." *Advocate Fin., L.L.C. v. Parker Interests, L.L.C.*, 2008 WL 2773650, at *2 (M.D. La. July 16, 2008).

Numerous courts throughout the country have denied motions to dismiss based on improper venue when the connection to the forum was based on similar events giving rise to the claim as the events alleged here. For example, in *Promero, Inc. v. Mammen*, the court denied the defendants' motion to dismiss for improper venue and recognized that, in a breach of contract action, venue can be proper in the plaintiff's forum where contract negotiations occurred in the forum, an agent of the defendant engaged in discussions regarding the contract while in the forum, and these communications led to the formation of the allegedly breached contract. No. 02 C 1191, 2002 WL 31455970, at *8 (N.D. Ill. Nov. 1, 2002); *see also Gruber Hurst Johansen & Hail, LLP v. Hackard & Holt*, 2008 WL 137970, at *5 (N.D. Tex. Jan. 15, 2008) (denying motion to dismiss for improper venue and placing greatest importance upon the location of "the signing of the contract forming the basis of the plaintiff's suit").

In *Ross v. Digioia*, the court recognized that the "place of performance" can serve as the proper venue for a breach of contract case. No. 11-1827, 2012 WL 72703, at *4 (E.D. La. Jan. 10, 2012). There, in determining whether venue was proper, the court considered "factors such as where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Id.* (quotation marks omitted). In so considering, the court determined that although the "contract was performed and allegedly breached in [another state]," venue was proper in the plaintiffs' selected forum because that is where the "contract negotiations . . .occurred," where "the financing . . . came from," and where "the harm [was] felt by the

plaintiffs." *Id.* The court held these were sufficient to ground the plaintiffs' claims in the forum selected by the plaintiffs. *Id.*

Here, the evidence is sufficient for proper venue in the Southern District of Mississippi:

- Negotiations regarding the terms of the Letter of Intent occurred in Gulfport, Mississippi, Ex. 1;

- Entry into the Letter of Intent occurred in Gulfport, Mississippi, *id.;*

- Part of El Dorado's performance under the Letter of Intent occurred in Gulfport, Mississippi, *id.;* and

- Payment of debts of Alaniz's were made through checks written in Gulfport, Mississippi, mailed from Gulfport, Mississippi, and paid with funds held by a bank in Gulfport, Mississippi, *id.*

Accordingly, Alaniz has a sufficient connection with Mississippi. The Southern District of Mississippi is the proper venue.

### III. Transfer of this Action to the Southern District of Texas would be improper.

Defendants request, as an alternative to dismissal for improper venue, that this Court transfer the case to the Southern District of Texas under 28 U.S.C. § 1404(a). Docket No. 12 at 25.

"The overriding principle governing transfer of venue motions is that a plaintiff's choice of forum should be 'highly esteemed.'" *Interglobal Shipping Co. v. Catholic Relief Serv.*, No. H-96-2561, 1991 WL 882593, at *8 (S.D. Tex. July 30, 1997) (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). "Importantly, it is the party seeking the transfer . . . that bears the burden of establishing that the proposed transferee forum is more convenient." *Id.*

"The party seeking to transfer must show good cause." *Hancock Fabrics, Inc. v. Rowdec, LLC*, No. 1:12-cv-131-SA-DAS, 2013 WL 866977, at *5 (N.D. Miss. Mar. 7, 2013) (denying motion to transfer) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)).  To "show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of the parties and witnesses, in the interest of justice." *Id.* (citing *In re Volkswagen*, 545 F.3d at 315). "Thus, when the transferee venue is not *clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* (citing *In re Volkswagen*, 545 F.3d at 315) (emphasis added).  "The clearly more convenient standard places a *significant burden* on defendants to show good cause for transfer." *U.S. Ethernet Innovations, LLC v. Samsung Electronics Co., Ltd.*, No. 6:12-CV-398, 2013 WL 1363613, at *1 (E.D. Tex. April 2, 2013) (citing *In re Volkswagen*, 545 F.3d at 314, n.10) (emphasis added).

In determining whether a transfer is warranted under Section 1404(a), courts apply a number of public interest and private interest factors.  *TDK Accounting & Tax Serv., LLC v. JPMorgan Chase Bank, N.A.*, No. 3:09-CV-563, 2010 WL 1416209, at *5 (S.D. Miss. April 7, 2010) (denying motion to transfer from Mississippi to Ohio).  In applying these factors, "the plaintiff's choice of forum should generally not be disturbed unless the balance of factors *strongly favors* the moving party." *Cooper-McClintock v. U.S.*, No. 3:11-CV-1412, 2011 WL 5182259, at *2 (N.D. Tex. Oct. 31, 2011) (emphasis added).

> A.      *The private interest factors weigh against transfer.*

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy,

expeditious and inexpensive." *TDK Accounting*, 2010 WL 1416209, at *5 (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986)).

Contrary to the arguments advances by the Defendants, the private interest factors do not favor transfer. First, both El Dorado and Defendants have easy access to the sources of proof. Indeed, following entry into the Letter of Intent, both parties retained a copy of the agreement for their files. Ex. 1; *see also TDK Accounting*, 2010 WL 1416209, at *5 (finding that the source of proof factor weighed against transfer in part because the relevant documents were already in the defendant's possession). Defendants' argument that this source-of-proof factor weighs in favor of transfer because physical evidence (equipment and real property) is located in Texas is a red herring. The location of equipment that El Dorado paid for, and the location of real property is not relevant when considering the proof necessary for this case, and Defendants offer no explanation to the contrary. This is not an eminent domain proceeding where a motion for jury view of the property could be considered. Instead, this is a case premised on a breach of contract case. This factor weighs against transfer.

The second and third private interest factors weigh the location of the witnesses that will be necessary to the case versus the plaintiff's choice of forum. Although Alaniz did identify witnesses that he anticipates will testify at trial on this matter, Docket No. 11-1, he failed to describe the nature and relative importance of their testimony. *Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio, Inc.*, No. 4:07-CV-034, 2008 WL 1868426, at *2 (N.D. Miss. April 24, 2008) (recognizing that "defendants must specifically relate the identity of the witnesses and the nature and importance of their testimony"). Since this case is premised on a contract entered into between the parties, it will require few witnesses. At this point in the litigation, El Dorado estimates that only two witnesses from El Dorado will be required (Tom Swarek and Roselyn

Chapman) to testify regarding the contract negotiations, the nature of the relationship between El Dorado and the Defendants, the performance by El Dorado, and the subsequent breaches by Defendants. *See* Docket No. 3-1; Ex. 1. Both Swarek and Ms. Chapman are located in Gulfport, Mississippi. Ex. 1. Additionally, El Dorado may call John Foxworth, its corporate attorney, to testify at trial regarding his witnessing the parties enter into the Letter of Intent. *Id.* Foxworth is located in Gulfport, Mississippi. *Id.*

Swarek only communicated with Alaniz regarding the Letter of Intent, and employees of Alaniz prevented agents or employees of El Dorado from accessing certain property. Ex. 1; Docket No. 3-1. Certainly Alaniz can make his employees available to testify at trial. *J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, 2008 WL 5378010, at *3 (E.D. Tex. Dec. 23, 2008) (denying motion to transfer and recognizing that the "Court presumes that the parties will be able to make their employees available to testify if necessary"). The second and third factors weigh against transfer, and Defendants' attempt to shift any alleged inconvenience to El Dorado must fail. *Betaface USA, LLC v, Davis Distrib., Inc. of Liberty*, No. 3:12-CV-1478, 2012 WL 5182909, at *8 (N.D. Tex. Oct. 19, 2012) (recognizing that a "court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to another").

The fourth private interest factor involves whether practical issues would make the trial of this matter easy, expeditious, and inexpensive. This factor weighs against transfer. In fact, a transfer of the case would unnecessarily delay the matter. *See Harris v. Turman Well Serv., Inc.*, No. 2:11-CV-264, 2012 WL 2375325, at *2 (E.D. Tex. 2012) (denying motion to transfer and finding that the final private interest factor weighed against transfer since "any transfer will result in delay for all parties). Further, El Dorado's attorneys have familiarized themselves with the case, but are not licensed in Texas. Defendants, on the other hand, already have counsel that is both

familiar with the case and licensed in Mississippi.  The Southern District of Mississippi presents the easier, more expeditious venue.

Each of the private interest factors weighs against transfer.  The Southern District of Mississippi is the proper venue.

**B.      *The public interest factors weigh against transfer.***

"The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law." *TDK Accounting*, 2010 WL 1416209, at *5.

The first factor, administrative difficulties flowing from court congestion, weighs against transfer.  The Southern District of Texas had 14,657 cases pending as of June 30, 2022.[1] The Southern District of Mississippi had only 2,056 cases pending as of June 30, 2022—more than seven times fewer.  *Id.*  Further, 332 cases in the Southern District of Texas have been pending for three years or more, and only 84 cases in the Southern District of Mississippi have been pending for three years or more.  *Id.*  For these reasons, the Southern District of Mississippi is the less congested venue.  *See LAS Enter.*, *Inc. v. Accu-Sys., Inc.*, No. 11-2196, 2011 WL 6697043, at *6–7 (E.D. La. 2011) (recognizing that based on the number of filings in each district that the District of Utah was less congested than the Eastern District of Louisiana, and thus this factor weighed against the Eastern District of Louisiana).

---

[1] https://www.uscourts.gov/sites/default/files/fcms_na_distcomparison0630.2022_0.pdf (Statistical Table Identifying the Civil Cases Pending in the United States District Courts by Nature of Suit and District).

The second public interest factor involves the reality that there "is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). This factor favors the Southern District of Mississippi. Contrary to Defendants' argument, Docket No. 12 at 28, this dispute is based in Mississippi, and not Texas. But for the contract that was negotiated in Mississippi, entered into in Mississippi, and partially performed in Mississippi, there would be no lawsuit. Mississippi undoubtedly has a strong local interest in having the case litigated here because it involves a Mississippi citizen, and relates to a contract negotiated, entered into, and partially performed in Mississippi. *See Granny's Alliance Holdings, Inc. v. Farrow Const. Specialties, Inc.*, No. 1:11-CV-165, 2012 WL 1836272, at *8–9 (S.D. Miss. May 12, 2012) (denying motion to transfer and finding that the fact that the contract was entered into in Mississippi weighs in favor of maintaining the case in Mississippi).

The final two public interest factors implicate which states' law will apply. Although Defendants state that Texas law applies to the claims at issue, based on Mississippi's "center of gravity test," they do so without any explanation or analysis. Docket No. 12 at 28. An important concept to consider, which was ignored by the Defendants, is that "the law of a single state does not necessarily control every issue in a given case." *Boardman v. United Services Auto. Ass'n*, 470 So.2d 1024, 1031 (Miss. 1985). In other words, the center of gravity test is to be applied to each issue and the laws of different states may be appropriate for different issues in the same cause of action. *Id.* So although the Defendants are correct that *some* events giving rise to this litigation occurred in Texas—namely Alaniz's conversion of El Dorado's property—that is only one issue for the Court to consider.

Another issue for the Court's consideration is El Dorado's breach of contract claim. In *Todd v. Deposit Guar. Nat'l Bank*, the court considered which state's law to apply in a breach-of-

contract case between parties from Kansas and Mississippi. 849 F. Supp. 1149, 1151–52 (S.D. Miss. 1994). To determine which state's law applied, the court considered the following factors: "(a) the place of contracting; (b) the place of negotiating the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at 1152. These factors support the conclusion that Mississippi law applies.[2]

Even if Texas law were to apply to part of this civil action, this Court has previously found that "[w]hile it is a factor to be considered, the fact that a federal court may apply state law from a different forum is not to be accorded great weight in deciding a motion to transfer, especially where the applicable state law appears to be clear." *McCombs v. Am. Airlines, Inc.*, No. 1:16-CV-386-HSO-JCG, 2017 WL 2805109, at *4 (S.D. Miss. June 28, 2017) (*quoting Sorrels Steel Co. v. Great Sw. Corp*, 651 F. Supp. 623, 630 (S.D. Miss. 1986)). The defendants have not argued that Texas law in these areas is unclear, nor have they argued that it would be difficult for this Court to apply Texas law. As quoted by this Court in *McCombs*, "[f]or this court to apply foreign law is not such an unusual circumstance to require transfer." *Id.* (quoting *Ocean Science and Eng'g, Inc. v. Int'l Geomarine Corp*., 312 F. Supp. 825, 830 (D. Dela. 1970)).

Because both the private and public interest factors favor the Southern District of Mississippi, the Court should deny Defendants' motion to transfer venue.

### IV.    12(b)(6)

Like their other arguments relating to CFS, El Dorado's proposed Second Amended Complaint moots Defendants' argument in support of their motion to dismiss for failure to state a

---

[2] The factual support for each of these factors has been previously set forth in this brief, and it is not necessary to analyze each of these factors especially considering that Defendants wholly failed to address any of these factors.

claim against CFS. *See* Docket No. 17-1. With respect to Alaniz, however, Defendants argue that the Letter of Intent is not enforceable because it is "too vague and its terms are too indefinite." Docket No. 12 at 29. Although "[c]ertainly, mere agreements to agree are unenforceable," *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 737 (Miss. 2019) (quotation marks omitted), that is not the case here.

Mississippi law provides that a contract consists of "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (¶ 6) (Miss. 2013) (emphasis omitted). Defendants' contention that the Letter of Intent is "too vague" and "indefinite" to constitute an enforceable contract simply does not hold water.

In the Letter of Intent, the parties agreed to form a new corporation, Black Diamond, and specified what amount of stock would be issued to each party—51% to El Dorado and 49% to Alaniz. Docket No. 3-2, at ¶ 3. The parties agrees that El Dorado would pay certain debts of Alaniz, including a loan that Alaniz had from Equify Financial and to pay off two cranes that Peoples United had as collateral for another one of Alaniz's loans. Docket No. 3-2, at ¶¶ 1, 4. The amount to be paid to Equify financial, $2.4 million, was listed in the Letter of Intent, as well as an agreement with regard to the time period in which El Dorado would pay Equify Financial. *Id.* at ¶ 1. Although the Letter of Intent does not list the amount of money for the cranes held as collateral by Peoples United, the "payoff" amount was a sum certain and does not render this an indefinite term. *See Etheridge v. Ramzy*, 276 So. 2d 451, 455 (Miss. 1973) ("A contract is sufficiently definite if it contains matter which will enable the court under proper rules of

construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence").

Finally, neither party to the Letter of Intent communicated an intent to not be bound until some other document was executed. It is well settled that "[i]f either party communicates an intent not to be bound until he achieves a fully executed document, no amount of oral agreement to specific terms will result in the formation of a binding contract." *Knight v. Sharif*, 875 F.2d 516, 525 (5th Cir. 1989) (internal quotation marks omitted). Such is not the case here.

Here, the parties expressly agreed that



There are no other verbal or written agreements and this Letter of Intent can only be altered in written form executed by both parties.

EL Dorado Oil & Gas, Inc.                    Baldemar Francisco Alaniz

Docket No. 3-2. The parties agreed to be bound by the Letter of Intent and went as far as to agree that it could only be altered in written form executed by both parties. This Court "should not frustrate the parties' expressed intent." *Gulf Coast Hospice LLC*, 273 So. 3d at 737.

The terms of the Letter of Intent are reasonably certain and it constitutes a valid and enforceable contract between El Dorado and Alaniz. The Court should deny Alaniz's motion to dismiss for failure to state a claim.

Further, Defendants' argument that El Dorado's claim for fraudulent conversion is barred by the economic loss rule is of no consequence. As stated by this Court, "[b]ecause Mississippi courts do not apply [the economic loss] rule in anything but products liability cases and the Mississippi Supreme Court has given no clear indication of adopting it in

other cases, this Court must decline to apply the rule as well." *Walker v. Williamson*, 131 F. Supp. 3d 580, 594–95 (S.D. Miss. 2015).

## CONCLUSION

For the reasons set forth above, El Dorado respectfully requests that the Court deny Defendants' motion to dismiss, or alternatively change venue. In light of El Dorado's Motion for Leave to file a Second Amended Complaint, Docket No. 17 and accompanying proposed Second Amended Complaint, Docket No. 17-1, in which El Dorado names only Alaniz as a Defendant, the Court should consider moot all arguments advocating for the dismissal of CFS

This the 3rd day of January, 2023.

Respectfully submitted,

EL DORADO OIL & GAS, INC.

By:     s/ *Stephen J. Carmody*
        One of its Attorneys

OF COUNSEL:

Stephen J. Carmody, MSB #8345
Claire D. Williams, MSB # 106001
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi  39205
Phone: 601-948-3101
scarmody@brunini.com
cwilliams@brunini.com

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of this Court using the ECF system, which sent notification of such filing to all registered users.

Dated:  January 3, 2023.

s/  *Stephen J. Carmody*
Stephen J. Carmody