IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**EL DORADO OIL & GAS, INC.**                                    **PLAINTIFF**

**v.**                                            **CAUSE NO. 1:22-cv-248-LG-BWR**

**BALDEMAR FRANCISCO ALANIZ**

                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY TO CHANGE VENUE AND TRANSFERRING CASE

**BEFORE THE COURT** is the [34] Motion to Dismiss or Alternatively

Motion to Change Venue filed by Defendant, Baldemar Francisco Alaniz.  Plaintiff,

El Dorado Oil & Gas, Inc., filed a [38] Response to the Motion, to which Defendants

did not reply.  After due consideration of the parties' submissions, the record in this

matter, and the applicable law, the Court finds that the Motion should be granted

in part and denied in part.  Although the Court maintains personal jurisdiction over

Defendant, for the reasons stated below transfer is preferable pursuant to 28 U.S.C.

§ 1404(a).  The case shall be transferred to the Southern District of Texas, Corpus

Christi Division.

### BACKGROUND

Plaintiff, El Dorado Oil & Gas, Inc., sues Defendant, Baldemar Francisco

Alaniz, for alleged violations of an agreement to which the parties entered in June

2021.  (2d Am. Compl., ECF No. 31).  Plaintiff alleges that its president Mr. Thomas

Swarek entered into a Letter of Intent (the "Letter") with Defendant.  (*Id.* ¶ 10).

The Letter is alleged by Plaintiff to be a "Contract" which was "ratified" by the

parties.  (*Id.* ¶¶ 10-11).  Plaintiff claims that, under the Letter, it signed on as a payor on a loan taken out by Defendant Alaniz from Equify Financial in the amount of $2,400,000.00.  (*Id.* ¶¶ 12-14).  Plaintiff also claims that it "has made all payments on the Equify Financial loan timely, is current, and continues to remain current."  (*Id.* ¶ 16).  Plaintiff reportedly began "transferring oil and gas leases to Black Diamond Services, Inc.," a company owned 51% by Plaintiff and 49% by Defendant Alaniz.  (*Id.*).  Plaintiff also "paid $850,000 . . . for the purchase of two cranes from Peoples United Equipment & Finance Co." (*Id.* ¶ 17).

Plaintiff also alleges that Defendant Alaniz has not honored the Letter.  The Letter provides that Plaintiff "will be in control for all decisions and Baldemar Francisco Alaniz agrees to comply with all decisions made by EL Dorado Oil & Gas, Inc. that will direct Black Diamond."  (Letter of Intent ¶ 5, ECF No. 31-3; *see also* 2d Am. Compl. ¶ 18, ECF No. 31).  These rights apparently extend to Plaintiff's control over Defendant's company, Claws Fiber, and two other companies, Tri Element, Inc. of Texas and Titanium Well Service, Inc.  (*Id.* ¶ 19).  Plaintiff complains that "[s]ince August 2022, Defendant Alaniz has been in breach of the Contract" by disregarding Plaintiff's business decisions, converting Plaintiff's property and equipment, using this property without payment, denying Plaintiff access to the property, renting the property to third parties, and depositing rental proceeds into a bank account to which Plaintiff does not have access.  (*Id.* ¶¶ 20-25).  Defendant allegedly "told Plaintiff's employees or agents to get off the property" and

"has locked Plaintiff's employees and agents out of the property."  (*Id.* ¶ 25).

Plaintiff also narrates an incident in which Defendant claimed he "would 'beat the

brain out' of [Plaintiff's] employee's skull if the employee returned to the property to

perform work for" Plaintiff.  (*Id.* ¶ 26).

Plaintiff complains that "Defendant has willfully disregarded the business

decisions and instructions of [Plaintiff] as to the operations of Black Diamond and

Defendant's company Claws Fiber, Inc., which has placed all assets of Black

Diamond and some assets of [Plaintiff] at significant risk."  (*Id.* ¶ 28).  Plaintiff filed

originally in this Court on September 14, 2022, amended its Complaint two weeks

later, and filed a Second Amended Complaint with leave of the Court.  (*See* Compl.,

ECF No. 1; Am. Compl., ECF No. 3; 2d Am. Compl., ECF No. 31).  It seeks damages

for breach of contract, tortious breach of contract, conversion, unjust enrichment,

and equitable estoppel, as well as costs, pre- and post-judgment interest, expert

witness fees and attorneys' fees, and a preliminary and permanent injunction

broadly seeking to return access to the property to Plaintiff and to cease

Defendant's conversion of the property.  (*See id.* ¶¶ 31-44; *see also* Mot. Preliminary

& Permanent Injunction, ECF No. 32).

On November 18, 2022, Defendants filed a [11] Motion to Dismiss, or,

Alternatively, to Change Venue.  Separately, Plaintiff filed a [17] Motion for Leave

to File Second Amended Complaint, which was [30] granted by Memorandum

Opinion and Order dated May 17, 2023.  *See El Dorado Oil & Gas, Inc. v. Alaniz,*

3

No. 1:22CV248-LG-BWR, 2023 WL 4844083 (S.D. Miss. May 17, 2023). In the Order, the Court found the Motion to Dismiss thereby moot but indicated that Defendant "will be permitted to resubmit a Motion to Dismiss in response to the Second Amended Complaint, when filed." *Id.* at *4.

Plaintiff filed its [31] Second Amended Complaint and accompanying [32] Motion for Permanent and Preliminary Injunctions on July 25, 2023. This Second Amended Complaint removed Claws Fiber Solutions, Inc. as a defendant in this litigation. The remaining Defendant, Baldemar Francisco Alaniz, renewed his [34] Motion to Dismiss or Alternatively to Transfer Venue on September 8, 2023, supported by a lengthy [36] Memorandum. Plaintiff [38] responded, but Defendant did not reply. The briefs in this case are thorough and well-written, and the Court is prepared to reach a decision.

DISCUSSION

## I.   Personal Jurisdiction

Defendant has challenged personal jurisdiction via Federal Rule of Civil Procedure 12(b)(2). "Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to assert by motion that the court lacks personal jurisdiction. 'If the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss.'" *Scheaffer v. Albertson's LLC*, No. H-21-2326, 2021 WL 4822159, at *4 (S.D. Tex. Oct. 15, 2021) (quoting *Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962)). "If a party raises the defense of

4

lack of personal jurisdiction, the non-moving party bears the burden of proving personal jurisdiction." *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014) (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)). "'Plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing.'" *CEH Energy, LLC v. Kean Miller, LLP*, 691 F. App'x 215, 216 (5th Cir. 2017) (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

"'The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Kee v. Howard L. Nations, P.C.*, No. 4:20CV127-SA-JMV, 2021 WL 4449986, at *2 (Sep. 28, 2021) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). "When considering whether a plaintiff has made a prima facie case for jurisdiction, the court must take the uncontroverted allegations in the plaintiff's complaint as true." *Kee*, 2021 WL 4449986, at *2 (citing *Cypress Pharms., Inc. v. CRS Mgmt., Inc.*, 827 F. Supp. 2d 710, 716 (S.D. Miss. 2011)). However, the district court is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

"A federal court sitting in diversity may assert [personal] jurisdiction if (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if

due process is satisfied under the fourteenth amendment to the United States Constitution." *Johnston*, 523 F.3d at 609; *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016). Here, Defendant argues that both Mississippi's long-arm statute and the Due Process Clause of the Fourteenth Amendment independently fail to justify the Court's exercise of personal jurisdiction.

### 1.      Long Arm Statute

Defendant first argues that Mississippi's long-arm statute fails to vest the Court with personal jurisdiction. "A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under state law." *Paz v. Brush Eng'd Mat., Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). Here, Mississippi's long-arm statute provides:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57. Courts often distinguish the three parts of the long-arm statute as the contract prong, the tort prong, and the doing business prong. *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 497 (5th Cir. 2012). One of these prongs must be satisfied to establish personal jurisdiction under Mississippi's long-arm

statute.

Here, Plaintiff invokes only the contract prong.  Under the contract prong, a nonresident is subject to personal jurisdiction in Mississippi if it enters into a contract with a Mississippi resident that is to be at least partially performed in Mississippi.  *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 617 (5th Cir. 1989) (citing Miss. Code Ann. § 13-3-57).  There is no dispute in this case that Plaintiff is a Mississippi resident, and both parties agree that Defendant is a Texas resident. (*See* Am. Compl. ¶ 2, ECF No. 31; Pl.'s Mem. Supp. Resp. Opp. Def.'s Mot. Dismiss, at 1, ECF No. 39; Am. Decl. Baldemar Francisco Alaniz ¶ 2 ECF No. 36-1).  As such, the long-arm statute is satisfied if Plaintiff can show that the contract[1] was to be at least partially performed in Mississippi.  Because the parties dispute the place of performance contemplated by their Letter, the Court will conduct a review of the caselaw on the matter.

Typically, the contract prong of the long-arm statute is satisfied by the performance of a contractual obligation, such as the rendering of services, in Mississippi.  *See, e.g., Aultman, Tyner & Ruffin, Ltd. v. Capital Rubber & Spec. Co., Inc.*, No. 2:10CV223-KS-MTP, 2011 WL 213471 (S.D. Miss. Jan. 21, 2011); *Cirlot Agency, Inc. v. Sunny Delight Beverage Co.*, 85 So. 3d 329 (Miss. Ct. App. 2012);

---

[1] There seems to be some dispute as to whether the Letter of Intent was, in fact, a binding contract.  (*See* Def.'s Mem. Br. Supp. Mot. Dismiss, at 31, ECF No. 36). However, Defendant does not raise this issue in response to Plaintiff's invocation of the contract prong.

*Scott M. Favre Pub. Adjuster, LLC v. Davis Dev., Inc.*, No. 1:12CV75-HSO-RHW, 2012 WL 2316906 (S.D. Miss. June 18, 2012); *Skin Consults., LLC v. Textron Aviation, Inc.*, No. 4:17CV166-SA-RP, 2018 WL 4621904 (N.D. Miss. Sep. 26, 2018); *Sunflower Mgmt. Holding Co., LLC v. Chicot Mem. Med. Ctr.*, No. 4:19CV144-SA-JMV, 2020 WL 13885386 (N.D. Miss. Sep. 21, 2020). It should also be noted that the delivery of goods or payments to or from Mississippi may also constitute in-state performance. *Miller v. Glendale Equip. & Supply Co.*, 344 So. 2d 736 (Miss. 1977); *Genesis Press, Inc. v. Carol Pub. Group, Inc.*, No. 1:99CV311-B-D, 2000 WL 33907680 (N.D. Miss. Mar. 30, 2000); *Madami Int'l, LLC v. Dinli Metal Indus. Co., Ltd.*, 276 F. Supp. 2d 586 (S.D. Miss. 2002); *Cypress Pharm., Inc. v. CRS Mgmt., Inc.*, 827 F. Supp. 2d 710 (S.D. Miss. July 28, 2011); *PowerTrain, Inc. v. Ma*, No. 1:11CV105-GHD, 2012 WL 716888 (N.D. Miss. Feb. 27, 2012); *Pittman v. Joe K. Pittman Co., LLC*, No. 2:15CV114-KS-MTP, 2015 WL 8492531 (S.D. Miss. Dec. 10, 2015).

Conversely, where no contractual obligations are performed in Mississippi, the contract prong is inapplicable. *See Cycles, Ltd.*, 889 F.2d at 618; *see also Sorrells v. R & R Custom Coach Works, Inc.*, 636 So. 2d 668, 671 (Miss. 1994) (refusing to exercise jurisdiction under contract prong where residents purchased the subject motor home out of state, and no work pursuant to warranty was to be performed in Mississippi); *Peterson v. Test Int'l, E.C.*, 904 F. Supp. 574 (S.D. Miss. 1995) (finding contract prong inapplicable where Mississippi resident obtained

8

contract in Louisiana for work to be performed in Algeria); *Thrash Aviation, Inc. v. Kelner Turbine, Inc.*, 72 F. Supp. 2d 709 (S.D. Miss. 1999) (finding contract prong inapplicable where Mississippi resident bought engine from Arkansas resident via a contract finalized in Arkansas, which was delivered to resident's Arkansas office); *Christian Tours, Inc. v. Homeric Tours, Inc.*, No. Civ. A. 3:99-CV-79-B-A, 2000 WL 33907683 (N.D. Miss. Mar. 30, 2000) (finding contract prong inapplicable where contract did not require nonresident's delivery of airline tickets to resident in Mississippi); *Vines v. Wyatt Energy Resources, LLC*, No. 5:20CV115-CWR-MTP, 2021 WL 1741885 (S.D. Miss. Apr. 2, 2021) (finding contract prong inapplicable where Mississippi resident provided services for a project in Texas).

Defendant argues that the "Letter of Intent" in this case envisioned oil field services to be performed in Texas, involving land, property, and equipment all located in Texas.  (*See* Am. Decl. Baldemar Francisco Alaniz ¶ 3, ECF No. 36-1.)  In response, Plaintiff argues that "various conversations and negotiations regarding the terms of the Letter of Intent were over the telephone with one party, Tom Swarek on behalf of El Dorado, in Mississippi."  (Pl.'s Mem. Supp. Resp. Opp. Def.'s Mot. Dismiss, at 8, ECF No. 39).  Plaintiff alleges that Defendant himself "traveled to Mississippi to further negotiate the terms of the Letter of Intent with Swarek, on behalf of El Dorado, and to ultimately enter into the Letter of Intent."  (*Id.*).[2]

---

[2] Defendant resists such claims and attests that "[t]hese alleged trips to Mississippi were mostly made **after** this lawsuit was brought by El Dorado" and were made toward settlement or resolution of the dispute rather than "to engage in 'business

Moreover, Plaintiff identifies a number of other contractual obligations it performed, including that it (1) "entered into purchase contracts" for the parties' shared business, Black Diamond, all of which "contained a venue clause adopting Mississippi law," (2) made payments to Equify Financial on Defendant's loan, and (3) "paid $850,000 for the purchase of two cranes that Peoples United had as collateral for a loan that Peoples United issued to Alaniz." (*Id.* at 1-3). Plaintiff represents that these obligations were satisfied in the form of checks sent from Gulfport, Mississippi, via its Mississippi bank. (*Id.*).

Many cases have indicated that the state where a contract was negotiated, formed and/or executed may be relevant in applying the long-arm statute. *See, e.g., Sheridan, Inc. v. C.K. Marshall & Co., Inc.*, 360 So. 2d 1223, 1225 (Miss. 1978) (noting, in applying the contract prong, "that execution of the contract by the parties occurred largely in Mississippi following telephone negotiations initiated in this state"). However, such courts also discuss whether any part of the contract was to be completed or discharged in Mississippi. *See id.* (observing that Mississippi resident purchased equipment pursuant to the contract and that nonresident paid rent on equipment at resident's Mississippi office).[3] Other courts have denied

dealings.'" (Am. Decl. Baldemar Francisco Alaniz ¶ 4, ECF No. 36-1) (emphasis in original). However, Defendant does not appear to dispute the claim that he traveled to Mississippi for the purpose of executing the Letter.

[3] *See, e.g., Shackelford v. Cent. Bank of Miss.*, 354 So. 2d 253 (Miss. 1978); *Murray v. Huggers Mfg., Inc.*, 398 So. 2d 1323 (Miss. 1981); *Med. Assur. Co. of Miss.*, 864 F. Supp. at 678; *First Miss. Corp. v. Thunderbird Energy, Inc.*, 876 F. Supp. 840 (S.D. Miss. 1995); *Willowbrook Found., Inc. v. Visiting Nurse Ass'n*, 87 F. Supp. 2d 629

application of the contract prong where the subject contract did not contemplate even part performance in Mississippi.  *See McCain Builders, Inc. v. Rescue Rooter, LLC*, 797 So. 2d 952, 953 (Miss. 2001); *Caterpillar Fin. Servs. Corp. v. Prisock*, No. 1:22CV58-MPM-RP, 2022 WL 17475774, at *3 (N.D. Miss. Dec. 6, 2022).  Therefore, the Court is hesitant to find personal jurisdiction on these grounds.  *See Martin, Martin & Martin v. Jones*, 616 F. Supp. 339, 343 n. 3 (S.D. Miss. 1985) ("[T]he long arm statute is to be construed liberally but is to be applied without enlargement of its provisions.").

However, Plaintiff is correct to caution against "an unjustifiably narrow and unfounded view of what performance of a contract entails."  *Med. Assur. Co. of Miss. v. Jackson*, 864 F. Supp. 576, 578 (S.D. Miss. May 24, 1994).  Indeed, it has identified other contractual obligations performed in part in Mississippi, paying various loans via checks sent from Mississippi and entering into other specified agreements from its Mississippi office.  The case law indicates that such actions are sufficient by themselves to vest the court with personal jurisdiction under the

---

(N.D. Miss. 2000); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 870 (5th Cir. 2000); *Jones v. Tread Rubber Corp.*, 199 F. Supp. 2d 539 (S.D. Miss. 2002); *Durham v. Katzman, Wasserman & Bennardini*, 375 F. Supp. 2d 495 (S.D. Miss. 2005); *Global Mfg. & Eng'g, Inc. v. Duo-Dent Dental Implant Sys., LLC*, No. 1:04CV761, 2005 WL 8170131 (S.D. Miss. July 19, 2005); *Barbour Intern., Inc. v. Permasteel, Inc.*, 507 F. Supp. 2d 602 (S.D. Miss. 2007); *LTA, Inc. v. Breeck*, No. 1:11CV213-WJG-RHW, 2011 WL 3841374 (S.D. Miss. Aug. 26, 2011); *M-D Med. Servs., Inc. v. M.A.S.H., Inc.*, No. 3:18CV336-HTW-LRA, 2019 WL 1433771 (S.D. Miss. Mar. 28, 2019); *Omni Techs., LLC v. Know Ink, LLC*, No. 1:18CV334-HSO-JCG, 2019 WL 4739298, at *5 (S.D. Miss. Sep. 27, 2019).

contract prong. *See, e.g., id.* at 578 (applying contract prong against nonresident where a settlement check "was sent from Mississippi and ultimately paid by a Mississippi bank" pursuant to the agreement); *Barbour Intern., Inc. v. Permasteel, Inc.*, 507 F. Supp. 2d 602 (S.D. Miss. 2007); *Pittman v. Joe K. Pittman Co., LLC*, No. 2:15CV114-KS-MTP, 2015 WL 8492531 (S.D. Miss. Dec. 10, 2015). Therefore, the Letter of Intent was to be at least partly performed in Mississippi.

### 2. Due Process Factors

Next, Defendant argues that the due process factors preclude personal jurisdiction. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which he has established no meaningful contacts, ties, or relations." *ITL Int'l, Inc.*, 669 F.3d at 498 (internal quotation marks omitted). Federal jurisdiction consistent with due process "may be general or specific." *Id.*; *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) ("Sufficient minimum contacts will give rise to either specific or general jurisdiction."). Here, Plaintiff alleges that the Court may exercise specific jurisdiction over Defendant.

Specific jurisdiction exists "where a defendant purposefully directs his activities toward the state" and "the plaintiff's claim arises out of or is related to the defendant's forum contacts." *DuPuy Orthopaedics, Inc.*, 888 F.3d at 778 (cleaned up). "Where the plaintiff alleges specific jurisdiction . . ., due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a

nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Int'l, Inc.*, 669 F.3d at 498.

The Fifth Circuit has held that "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Ritter*, 768 F.3d at 433 ("[M]erely contracting with a resident of the forum state does not establish minimum contacts.") (citation omitted). "An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections" of Mississippi law. *Montcrief Oil Int'l*, 481 F.3d at 312. "Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state." *Id.* Rather, factors, such as "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing'" may be considered in determining whether a contracting party possesses minimum contacts with the forum state. *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

Duly applying these principles, the Court must find that "the mere fact that [Defendant] contracted with a Mississippi company is not a sufficient basis for

finding it had the minimum contacts required for an exercise of personal jurisdiction." *Barbour Int'l, Inc.*, 507 F. Supp. 2d at 608. "'Rather, the court must 'look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [Defendant] purposefully established minimum contacts with the forum.'" *Id.* (quoting *Stuart*, 772 F.2d at 1193).

Relevant to these factors, Plaintiff argues that Defendant maintains minimum contacts in that his "ongoing communications with Swarek occurred in Mississippi, his negotiations with Swarek were in Mississippi, and his entry and execution of the Letter of Intent happened in Mississippi." (Pl.'s Mem. Supp. Resp. Opp. Def.'s Mot. Dismiss, at 10, ECF No. 39). While Defendant locates the land, property and equipment involved in this case in Texas, Plaintiff observes that other actions contemplated by the Letter of Intent, including the mailing of payments and entry into agreements concerning Defendant's debts, were to be performed in Mississippi. (*See id.* at 1-4).

Here, the Court finds that Defendant purposely availed himself of the protections of Mississippi law such that he should have reasonably anticipated being hauled into court here. Defendant negotiated telephonically with a Mississippi resident and personally appeared in this state to execute the Letter of Intent. *D.J. Invest., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547-48 (5th Cir. 1985) (finding personal jurisdiction where the defendant engaged in

14

"telephone conversations with plaintiff" and then "personally appear[ed] in Texas"
to continue negotiations regarding a business transaction); *Barbour Int'l Inc.*, 507 F.
Supp. 2d at 608-09 (finding personal jurisdiction where the plaintiff alleged that
defendant solicited a business relationship with him and "traveled to Mississippi to
negotiate the terms of the parties' eventual agreement" and contractually arranged
for deliveries to be made to Mississippi); *First Miss. Corp.*, 876 F. Supp. at 844
(finding personal jurisdiction where defendants "'reached out beyond' Kentucky and
negotiated with a Mississippi corporation . . . extensively by letter, facsimile and
telephone to Mississippi, and agreed that various payments were to be made to
Mississippi"); *Willowbrook Found., Inc.*, 87 F. Supp. 2d at 634 (finding personal
jurisdiction where the defendant entered into a contract partly performed in
Mississippi after "conduct[ing] negotiations regarding the terms of the contract via
telephone communication, mail, and facsimile transmissions from Tennessee to
Mississippi"); *Global Mfg. & Eng'g, Inc.*, 2005 WL 8170131, at *3. Besides, the
parties' Letter of Intent, though concentrated in Texas, does contemplate some
actions in Mississippi.  Moreover, a nexus clearly exists between these contacts and
the case at bar.  Therefore, the Court finds that Defendant availed himself of the
protections of Mississippi law and maintains minimum contacts sufficient to justify
the exercise of personal jurisdiction.

Finally, the Court considers whether the exercise of jurisdiction over
Defendant would be fair and reasonable.  In assessing fairness, "courts balance (1)

the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 544 (5th Cir. 2014). The Court finds that these factors would not defeat the exercise of personal jurisdiction, given that Defendant himself attests that he has continued to travel to Mississippi "**after** this lawsuit was brought by El Dorado" in an attempt "to end this dispute and avoid the cost and turmoil it was causing." (*See* Am. Decl. Baldemar Francisco Alaniz ¶ 4 ECF No. 36-1). Therefore, as a matter of due process, personal jurisdiction is established.

## II.    Transfer Under 28 U.S.C. § 1404(a)

Although personal jurisdiction has been established, the Court finds good cause to transfer this case pursuant to 28 U.S.C. § 1404(a). District courts "have broad discretion in deciding whether to order a transfer" under 28 U.S.C. § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008). This statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ." 28 U.S.C. § 1404(a).

Defendant has established that this action might have been brought in the Southern District of Texas, Corpus Christi Division. According to Defendant, "it cannot be disputed that suit could have been filed in that district since the Texas

Defendant resides there, complete diversity exists, and the amount in controversy exceeds $75,000." (*See* Def.'s Mem. Br. Supp. Mot. Dismiss, at 25, ECF No. 36). Plaintiff's jurisdictional allegations agree with this representation. (*See* Am. Compl. ¶¶ 1-6, ECF No. 31). To determine whether transfer is in the interest of justice and for the convenience of the parties and witnesses, courts evaluate private and public interest factors. *In re Volkswagen of Am.*, 545 F.3d at 315.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive . . .. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* (internal quotation marks and brackets omitted). These factors are not exhaustive or exclusive, and none of the factors have dispositive weight. *Id.* The Fifth Circuit has explained that "[w]e do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology." *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013).

Here, the factors favor transfer, although the private interest factors are unclear. Because all the work contemplated by the Letter in this case was to be performed in Texas, and involving property and equipment there, it appears to the Court, despite Plaintiff's skepticism, that a Texas forum facilitates access to sources

of proof.  *See Young v. Waldon*, No. 1:15CV14, 2015 WL 13694664, at *2 (E.D. Tex. May 22, 2015) ("All of the operative facts occurred in the Southern District of Texas and the property that is at the center of this dispute is located in that District. . .. Moreover, the Plaintiffs have given no indication that there is any proof located in this District.  Accordingly, because all the proof is likely located within the Southern District, this factor weighs in favor of transfer.").  The Court finds the application of the second and third factors tenuous, given that neither party has described in detail the witnesses involved in this case or their places of residence. Plaintiff is correct that the fourth factor would slightly weigh against transfer due to the possibility of resulting delay.

However, the public interest factors are more decisive in this case.  Plaintiff points out that the Southern District of Texas maintains a busier docket.  However, the Court finds that the Southern District of Texas has the greatest interest in resolving this dispute, because it concerns real property located in Texas, and the injunctive relief requested by Plaintiff would likely take effect there.  *See Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F. Supp. 3d 394, 428 (E.D. Tex. Mar. 30, 2021) ("In disputes involving real property, this factor weighs in favor of the location of the property.") (citations omitted).  Further, the acts allegedly constituting breach of contract occurred in Texas, not Mississippi.  *See Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*, Civ. No. H-07-637, 2007 WL 5186798, at *6 (S.D. Tex. Sep. 11, 2007) ("[T]he Court finds that Oklahoma is a

18

more appropriate forum because Texas does not have a strong interest in litigation involving a contract performed and allegedly breached in Oklahoma."). Hence, Texas possesses a greater public interest in this controversy than Mississippi. The Court thereby finds that the Southern District of Texas is a more convenient and appropriate forum for this matter.

Finally, Texas law likely governs the parties' rights and responsibilities, so the third and fourth public interest factors prefer transfer. Mississippi "appl[ies] the 'center of gravity' test to determine which law applies to the substantive contract issues," *Sentinel Indus. Contr. Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 959-60 (Miss. 1999), and Texas law "determine[s] contractual rights and duties by the law of the state with the most significant relationship to the transaction and the parties." *Minn. Min. & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735 (Tex. 1997) (citing Restatement (2d) of Conflicts of Laws § 188(1) (1971)). Because it is centered in Texas, the Letter of Intent, under either standard, is likely governed by Texas law. *See Homolka v. Clark*, No. 3:08CV99-DPJ-JCS, 2009 WL 10670973, at *5 (S.D. Miss. Jan. 20, 2009) (finding that Texas has the most significant relationship with the alleged agreement without resolving conflict-of-law issues). Hence, Texan courts are in the best position to resolve this dispute and transfer thereto is appropriate for this additional reason.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [34] Motion to Dismiss or Alternatively Motion to Change Venue filed by Defendants, Baldemar

Francisco Alaniz and Claws Fiber Solutions, LLC, is **GRANTED IN PART AND DENIED IN PART.**

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that this lawsuit is **TRANSFERRED** to the United States District Court for the Southern District of Texas, Corpus Christi Division.

      **SO ORDERED AND ADJUDGED** this the 25th day of January, 2024.

                     s/ *Louis Guirola, Jr.*

                     LOUIS GUIROLA, JR.
                     UNITED STATES DISTRICT JUDGE